**Walter A. WILSON, d/b/a Cedar Crest Funeral Home, Appellant,**

v.

**Don FERGUSON, et al., Appellees.**

**No. 12–86–00169–CV.**

Court of Appeals of Texas,
Tyler.

March 15, 1988.

Rehearing Denied April 21, 1988.

Donald W. Hill, Dallas, for appellant.

Gordon F. Thrall, Norman, Spiers, Thrall, Angle & Guy, Jacksonville, for appellees.

SUMMERS, Chief Justice.

This is an appeal from a judgment awarding damages for mental anguish, exemplary damages, and attorney fees in a breach of contract and negligence action. We reform and, as reformed, affirm.

Plaintiffs/appellees Don Ferguson, James Robert Ferguson, Donna Marie Fer-

guson, and J.W. Simpson, Jr. (Fergusons) brought this action against defendants/appellants Walter A. Wilson, Sr., individually and d/b/a Cedar Crest Funeral Home (Wilson); E.P. Shaw, individually and d/b/a Oakwood Cemetery; and George Barker, individually and d/b/a E & M Grave Service. The Fergusons sought recovery of damages for mental anguish, exemplary damages, and attorney fees resulting from an alleged breach of contract and the negligent acts and omissions which occurred during the conducting of funeral services for Mrs. Versa Ferguson, deceased. The Fergusons are the brother, son, daughter, and nephew, respectively, of the deceased.

The Fergusons engaged Wilson, a licensed funeral director and owner of Cedar Crest Funeral Home in Dallas, Texas, to provide funeral services for their deceased relative, Mrs. Versa Ferguson (the deceased). The day after Mrs. Ferguson's death, Wilson executed a written agreement with James Robert and Donna Marie Ferguson which provided for Wilson to provide certain funeral services for burial of the deceased. Preparation of the grave was to be handled by E & M Grave Services, an independent contractor, who was contacted by Wilson.

Following memorial services at Wilson's Dallas funeral home, a funeral procession conducted by Wilson proceeded from the funeral home to the Oakwood Cemetery in Terrell, Texas. The funeral procession consisted of a hearse and limousine with drivers, all provided by Cedar Crest Funeral Home, as well as a forty-car procession of family and friends.

When the funeral procession arrived at the cemetery, the Fergusons and Wilson's employees discovered the grave had not been completely prepared to receive the deceased. The dirt from the grave was piled next to the gravesite with no covering. The canopy awning was half up and did not provide any covering or shelter from the weather. It was drizzling rain during and after the services. There were only four chairs available, and these had to be used to hold the casket because the casket rack slipped and nearly fell into the grave. The bottom of the grave was unlevel, and at such an extreme angle that the head of the coffin would be less than one foot below the surface of the ground. The concrete grave liner was damaged because the concrete lid had been dropped into the grave. The lid of the grave liner was protruding out of the ground with a piece of chain tied around it hooked to the back of a pickup truck. These conditions were witnessed by the Fergusons after their arrival at the gravesite. Only one E & M Grave Service employee was at the gravesite. Apparently there were no means available by which to correct the gravesite problems. The concrete lid to the grave liner was lodged inverted in the ground and could not be removed.

The representatives from Cedar Crest Funeral Home (that being the drivers of the hearse and family limousine) took no action to assist the Fergusons in resolving the problems found at the gravesite, but instead left the gravesite saying they were in a hurry for another funeral. Thus, the funeral home representatives abandoned the deceased's remains at the cemetery knowing that the grave was not prepared to receive the body.

With the assistance of two passers-by, Simpson and the grave service employee removed the concrete lid from the gravesite to open the grave for receiving the coffin. After the coffin was lowered into the grave by hand, the grave service employee dropped his end of the concrete lid, smashing the coffin and damaging the concrete liner.

When family members returned the next day to correct the problems at the gravesite, they found that someone had filled in the grave, leaving the coffin so close to the surface that it was visible above ground. On return to the gravesite the following day, family members were told by grave service employees that the grave had been opened again, leveled, and the grave liner with coffin had been replaced in the ground while still broken. The Fergusons continued to call all three defendants demanding that the broken coffin and grave be cor-

rected. None of the defendants satisfied the Fergusons' demands.

The case was tried to a jury. The thirteen special issues submitted were answered in favor of the Fergusons. Based on the jury's verdict, the trial court rendered judgment in favor of plaintiffs James Robert Ferguson, Donna Marie Ferguson, and J.W. Simpson, Jr., jointly, against Walter A. Wilson, Sr., for the total sum of $13,400.00, together with attorney fees in the sum of $20,000.00 for services rendered in the trial court plus additional sums as attorney fees in the event of appeal. Said plaintiffs, jointly, were also awarded judgment against E.P. Shaw, individually and d/b/a Oakwood Cemetery, for the sum of $4,050.00. Only defendant Wilson appeals.

Wilson brings eight points of error.

Wilson argues his first and sixth points of error together. The first point contends that the trial court erred in overruling his motion for instructed verdict and in submitting Special Issues Nos. 7A, 8, and 10 [1] because there was no evidence to support

any injury to appellees, and there was no evidence of any willful or wanton conduct justifying the assessment of exemplary damages. In his sixth point Wilson contends that the trial court erred in overruling his motion for new trial because there was insufficient evidence to support the jury's findings of damages "resulting from the breach of duty, legal or contractual, negligent acts or omissions, and wanton or willful conduct" of Wilson. While Wilson refers specifically to Special Issues Nos. 7A, 8, and 10, his argument under these points also encompasses the jury's finding under Special Issue No. 9 of willful and wanton conduct. [2]

■ The only argument which Wilson makes under these two points is that there is no proof of "physical injury" resulting from mental anguish. Wilson is correct that as a general rule, Texas courts require a resulting physical injury or a physical manifestation of the mental anguish. *Moore v. Lillebo*, 722 S.W.2d 683, 684 (Tex.

---

1.                SPECIAL ISSUE NO. 7–A

What percentage of the negligence that caused the occurrence in question do you find from a preponderance of the evidence is attributable to each of the parties you have found negligent?

The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

Answer by stating the percentage, if any, opposite each name.

The percentages you find must total 100%.

| | |
|---|---|
| Walter A. Wilson, Sr.: | 75% |
| E.P. Shaw | 25% |
| George Barker: | —% |
| TOTAL | 100% |

SPECIAL ISSUE NO. 8

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the following named persons for their injuries, if any, proximately caused by breach of duty, or negligent acts or omissions of any Defendant?

| | | |
|---|---|---|
| (a) | As to Don Ferguson | $ NONE |
| (b) | As to James Robert Ferguson | $5000.00 |
| (c) | As to Donna Marie Ferguson | $5000.00 |
| (d) | As to J.W. Simpson, Jr. | $1200.00 |

....

SPECIAL ISSUE NO. 10

What sum of money, if any, should be assessed as exemplary damages for wanton or willful negligence, if any you have found as to any Defendant, bearing in mind that "exemplary

damages" means an amount that you may in your discretion award as example to others and as a penalty or by way of punishment, in addition to any amount you may have found as actual damages?

(a) Answer in dollars and cents, if any, as to Walter A. Wilson, Sr. $5000.00

(b) Answer in dollars and cents, if any, as to E.P. Shaw. $1250.00

(c) Answer in dollars and cents, if any, as to George Barker.
$—

2.                SPECIAL ISSUE NO. 9

Were any of the acts or omissions of the Defendants listed below, acting individually or through their employees, in conducting or supervising funeral services willful or wanton negligence?

Answer "Yes" or "No" in the space provided by each Defendant listed below.

| | | |
|---|---|---|
| (a) | Walter A. Wilson, Jr. | Yes |
| (b) | George Barker | Yes |
| (c) | E.P. Shaw | Yes |

In answer to the above Special Issue, you are instructed that "willful" or "wanton" negligence means more than momentary thoughtlessness, inadvertance, or error of judgment. It means such an entire want of care as to indicate that the act or omissions or commission complained of was the result of conscious indifference to the rights, safety, or welfare of the persons affected by it.

1986); *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953). However, in cases resulting from the mishandling of a corpse, proof of a physical injury or manifestation is not required. *Moore*, 722 S.W. 2d at 685. *See Classen v. Benfer*, 144 S.W.2d 633, 635 (Tex.Civ.App.–San Antonio 1940, writ dism'd judgmt cor.). Thus, no proof of physical injury is required herein.

■ Next we address the remaining complaints raised under points one and six. The Fergusons testified that they underwent severe anguish resulting specifically from the mishandling of the coffin and the burial. Expert medical testimony confirmed that these family members suffered extreme aggravation as a result of Wilson's mishandling of the burial. Wilson failed to controvert this evidence at trial. The evidence shows that Wilson's employees (one a licensed funeral director) abandoned the coffin with the body inside at the gravesite, knowing that the grave was not ready to receive the coffin. Furthermore, Wilson and his employees ignored the family's request for help in correcting the problem. Considering only the evidence and inferences tending to support the jury's findings in answer to Special Issues Nos. 7A, 8, 9, and 10, we conclude there is evidence to support the submission of those issues and the jury's findings thereto. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Furthermore, considering all the evidence, we conclude the evidence is factually sufficient to support the jury's findings in answer to said issues. *Garza*, 395 S.W. 2d at 823. Wilson's first and sixth points are overruled.

■ In his fourth point Wilson asserts that the trial court erred in overruling his motion for instructed verdict because of the contractual disclaimer in the written agreement. Wilson argues that based upon that disclaimer he is entitled to judgment as a matter of law. The disclaimer reads as follows:

> For the sole consideration of cash advances received, I (we) hereby release and discharge the CEDAR CREST FUNERAL HOME from all [c]laims grievances and all liabilities for damages

which may arise while acting as a purchasing agent for any items or services other than their Professional services listed above.

A disclaimer of negligence contained in an agreement is referred to in contract law as an exculpatory clause. In the instant case, the exculpatory clause is not effective. The clause, by its own terms, only disclaims liability for the negligence of others. Wilson was found liable, not based upon the negligence of others but upon his own negligence and the negligence of his employees at the gravesite. Wilson's fourth point of error is overruled.

In his second point of error Wilson contends there is no evidence to support a finding of willful, wanton conduct, or negligence of any type. These contentions have already been addressed and rejected. The second point is overruled.

In his third point Wilson argues that there is no evidence to support the breach of any duty, legal or contractual, on the part of Wilson based upon the negligence of Shaw, an independent contractor, being imputed to him. The point is without merit. Wilson's liability is based not upon the negligence of Shaw, but upon his own negligence and the negligence of his employees. His employees chose to abandon the coffin with the body at the gravesite with knowledge that the grave was not ready for burial. Further, Wilson and his employees failed to take prompt action to correct the situation. The third point of error is overruled.

■ Wilson in his fifth point of error contends that there is factually insufficient evidence to support the finding that Wilson's conduct was a proximate cause of the damages sustained by the Fergusons. Had Wilson's employees not abandoned the body and coffin at the gravesite, the injury would not have been suffered. Further, it was clearly foreseeable that the abandonment of the body and coffin at the gravesite could lead to the injury sustained by the Fergusons. Considering all the evidence, we conclude the evidence is factually sufficient to support the finding of proximate cause. The fifth point is overruled.

Wilson in his seventh point of error contends there is factually insufficient evidence to support the finding of willful, wanton conduct and negligence. The relevant evidence has been addressed previously. Considering all the evidence, we conclude that the evidence is factually sufficient to support the finding.

In his eighth point of error Wilson asserts that the trial court erred in denying his motion to disregard the jury's finding in answer to Special Issue No. 11 because there was no evidence in the record that the Fergusons made any presentment of their claim for attorney fees for at least thirty days prior to the filing of suit or thirty days prior to trial as required by Tex.Civ.Prac. & Rem.Code Ann. §§ 38.001–002 (Vernon 1986).[3] That statute allows recovery of reasonable attorney fees if the claim is for, inter alia, services rendered, labor performed, or breach of an oral or written contract.

Although the Fergusons' recovery is in tort, the negligence complained of arose out of a breach of contract. A party to a contract to perform services owes a common law duty to perform with ordinary care. Negligent omission or commission relating to the performance of the contract is a tort as well as a breach of contract. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947); *see Coulson & Cae v. Lake LBJ Mun. Utility Dist.*, 734 S.W.2d 649 (Tex.1987).

The Fergusons pleaded breach of contract and the jury found that Wilson had breached the contract. Although the recovery in the instant case is in tort, an award of attorney fees is permissible since there was a claim for and a finding of breach of contract, and the tort complained of arose out of that breach. *Rocha v. Merritt*, 734 S.W.2d 147 (Tex.App.—Houston [1st Dist.] 1987, no writ).

However, in order to recover attorney fees under this statute, section 38.002 requires a plaintiff to *plead and prove* that *presentment* of the contract claim *was made* to the opposing party and that the

party failed to tender performance. *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983). The Fergusons did not plead and prove these facts. Wilson's eighth point of error is sustained.

We reform the judgment of the trial court by deleting that part awarding attorney fees to the Fergusons. As reformed, the judgment of the trial court is affirmed.

3. Formerly Tex.Rev.Stat.Ann. art. 2226.